205 P.3d 916 (2009)
STATE of Washington, Respondent,
v.
Andre Toi MENESES, Appellant.
No. 61118-6-I.
Court of Appeals of Washington, Division 1.
April 13, 2009.
*917 Elizabeth McNeely Albertson, Washington Appellate Project, Seattle, WA, for Appellant.
Andre Toi Meneses, pro se.
Erin S. Norgaard, King County Prosecuting Attorney's Office, Seattle, WA, for Respondent.
GROSSE, J.
¶ 1 To ensure that the State is held to its burden of proving a defendant's guilt beyond a reasonable doubt, jury instructions must include every essential element of the charged crime(s). Telephone harassment requires that the defendant possess, at the time of initiating the telephone call, the intent to harass or threaten. Here, the jury instructions properly conveyed that temporal element. Meneses raises numerous other issues on appeal, including sufficiency of the evidence, double jeopardy, and erroneous jury instructions  none of which are meritorious. We affirm.

FACTS
¶ 12 Andre Toi Meneses repeatedly called Jamila Willis, his former girlfriend and the primary custodial parent of their 7-year-old son, in the spring of 2007. Meneses and Willis were in an ongoing dispute over Meneses' right to see his son. Meneses left numerous messages on Willis' cellular telephone voicemail account in which he used incredibly vile language, including racial slurs and descriptive obscenities. In these messages, Meneses repeatedly threatens to kill Willis, her current live-in boyfriend, Prim, and the couple's 5-month-old baby. *918 Meneses boasts and implies in several of the messages that he and his family are associated with the local Filipino Mafia and that they would take pleasure in employing violence against Willis and her family. In one voicemail message, Meneses declares that he has Willis' place of employment surrounded by persons so affiliated and implies that they are waiting for her to leave to attack her. And, in two of the calls, Meneses warns Willis not to go to the police.
¶ 3 When a King County sheriff was investigating the vandalism of Willis' and Prim's vehicles in May 2007, Willis first reported the threatening telephone calls from Meneses. A police detective made a recording consisting of ten of these voicemail messages. Based on this recorded compilation, Meneses was charged with multiple counts of telephone harassment (four counts felony and four counts misdemeanor) and two counts of intimidating a witness.
¶ 4 Meneses defended that Willis and Prim knew that he was only speaking out of anger because of the situation with his son and that they would not have actually taken his words seriously and felt threatened by the calls. The jury found Meneses guilty on all ten counts as charged, each count carrying a domestic violence designation. The trial court sentenced him to 30 months' imprisonment, an exceptional sentence below the applicable standard range.
¶ 5 Meneses appeals.

ANALYSIS

Jury Instructions  Telephone Harassment and Mens Rea
¶ 6 Meneses contends the jury instructions for the eight counts of telephone harassment were flawed because they did not include every essential element of the crime, thus alleviating the State of its duty to prove every element beyond a reasonable doubt.[1] More specifically, Meneses contends the jury instructions were deficient as to the requisite mens rea. RCW 9.61.230 proscribes telephone harassment and provides in pertinent part:
(1) Every person who, with intent to harass, intimidate, torment or embarrass any other person, shall make a telephone call to such other person:
(a) Using any lewd, lascivious, profane, indecent, or obscene words or language, or suggesting the commission of any lewd or lascivious act; or
(b) Anonymously or repeatedly or at an extremely inconvenient hour, whether or not conversation ensues; or
(c) Threatening to inflict injury on the person or property of the person called or any member of his or her family or household; is guilty of a gross misdemeanor, except as provided in subsection (2) of this section.[[2]]
¶ 7 In State v. Lilyblad, the Supreme Court directly addressed the issue of timing and intent for telephone harassment.[3] Prior to the 2008 Lilyblad decision, there was a split among the Court of Appeals' divisions as to when the defendant must have formed the requisite mens rea under the telephone harassment statute.[4] The Supreme Court clarified in Lilyblad that a defendant must have already formed the intent to harass or threaten the call's recipient at the time the defendant initiates the telephone call.
¶ 8 Jury instruction 7 in this case states:
A person commits the crime of Telephone Harassment when he or she, with intent to harass or intimidate any other person, makes a telephone call to such other person threatening to inflict injury on the person called or any member of the family or household of the person called.
A person also commits the crime of Telephone Harassment when he or she, with the intent to harass or intimidate any person, makes a telephone call to such other *919 person threatening to kill that person or any other person.
To be a threat, a statement must occur in a context or under such circumstances where a reasonable person would foresee that the statement would be interpreted as a serious expression of intention to carry out the threat.[[5]]
The word "makes" is critical. It implies to begin or initiate the telephone call in this context. A reasonable juror would understand that the requisite mens rea or intent needed to be formed by the time the defendant initiated the call underlying the telephone harassment charges. Jury instruction 7 is in accord with Lilyblad and its interpretation of the telephone harassment statute.

Jury Instructions  True Threat
¶ 9 Meneses contends the "[t]o convict" telephone harassment jury instructions were deficient because they did not address an essential element: that the defendant caller made a "true threat" or at least would have reasonably been perceived to have done so. The existence of a true threat, however, is not an essential element of the crime. Moreover, the jury instructions properly informed the jury of the applicable law. The last portion of jury instruction 7 provides:
To be a threat, a statement must occur in a context or under such circumstances where a reasonable person would foresee that the statement would be interpreted as a serious expression of intention to carry out the threat.[[6]]
¶ 10 Here, the reasonable person standard is easily satisfied.[7] The test is an objective one. In fact, it is difficult to imagine a context in which a reasonable person would not consider the recorded statements to be "a serious expression of intention to carry out the threat[s]." In the messages, Meneses utters multiple derogatory statements, including bigoted racial slurs about Willis, her boyfriend, and their child as well as repeated and varied threats of violence. We think it fair to say that "a reasonable person would foresee that [these statements] would be interpreted as a serious expression of intention" by Meneses to act on his words.

Denial of Requested Jury Instructions  Attempting to Intimidate a Witness and Jury Tampering
¶ 11 Meneses contends the trial court erred when it refused to instruct the jury on the allegedly lesser included offenses of attempting to intimidate a witness and witness tampering. For a trial court to issue a lesser included offense instruction, there must be evidence presented regarding that offense.[8] No such evidence exists here.
¶ 12 Meneses cannot be found to have attempted to intimidate by leaving a voicemail as the act was complete when he ended his message. He did not record a message and then fail to send it. The attempt, in other words, was successful. And, there is no evidence that Meneses ever attempted to induce Willis to do or refrain from doing anything. The two voicemail messages supporting the witness tampering convictions are simply threats, not inducements to not call the police. The trial court properly declined Meneses' requested jury instructions.

Double Jeopardy
¶ 13 Meneses contends his convictions for intimidating a witness and felony harassment that are based on the same telephone call violate double jeopardy principles. Double jeopardy prohibits multiple punishments for the same crime.[9] A single course of conduct may give rise to liability under several criminal statutes. To not violate double jeopardy, the crimes must be different both in fact and in law.[10] That inquiry is necessarily *920 fact specific. The exact same evidence, here a single voicemail message, supports the two convictions. The legislature, however, has the authority to impose multiple punishments for a single act or course of conduct as long as the crimes have separate elements that require proof that the other does not.[11] In other words, the offenses must be legally different. Here, even though the same evidence supports both convictions, they are not the same offense as charged and tried.
¶ 14 Intimidating a witness as charged and proven here required that Meneses attempt to influence Willis to not report information relevant to a current police investigation by means of a threat.[12] Felony telephone harassment as charged and proven here required Meneses to have called with the intent to harass or intimidate Willis and threaten to injure either her or her family.[13] While both required threats, each served different purposes. For intimidating a witness, the threat's purpose was to interfere with the reporting of information to the police whereas the purpose of the other is to harass or intimidate the call's recipient for any reason. These convictions are not the same both in fact and in law and thus do not violate double jeopardy principles.

Statement of Additional Grounds (SAG)
¶ 15 In his SAG, Meneses addresses arguments already raised by defense counsel on appeal (i.e., double jeopardy, sufficiency of the evidence) in addition to many others, such as jurisdictional and time for trial issues. We do not need to reconsider those issues already raised and well argued by defense counsel on appeal.[14] Further, even though Meneses is not required to cite to the record or authority in his SAG, he must still "inform the court of the nature and occurrence of [the] alleged errors," and this court is not required to search the record to find support for the defendant's claims.[15] Several of Meneses' grounds are not sufficiently developed to allow review, and we do not reach them. Ultimately, none of the arguments Meneses presents in his SAG are meritorious.
¶ 16 For the above reasons, we affirm.
WE CONCUR: LAU and LEACH, JJ.
NOTES
[1] See State v. Allen, 101 Wash.2d 355, 358, 678 P.2d 798 (1984).
[2] (Emphasis added.)
[3] 163 Wash.2d 1, 177 P.3d 686 (2008).
[4] RCW 9.61.230; see State v. Alexander, 76 Wash. App. 830, 837, 888 P.2d 175 (1995); State v. Lilyblad, 134 Wash.App. 462, 465-66, 140 P.3d 614 (2006); see also City of Redmond v. Burkhart, 99 Wash.App. 21, 26-27, 991 P.2d 717 (2000), abrogated by Lilyblad, 163 Wash.2d 1, 177 P.3d 686 (2008).
[5] (Emphasis added.)
[6] (Emphasis added.)
[7] It follows that Meneses' argument that there was insufficient evidence to prove that he had made the calls with the intent to harass or intimidate is without merit.
[8] See State v. Workman, 90 Wash.2d 443, 447-48, 584 P.2d 382 (1978).
[9] U.S. CONST. amend. V; WA CONST. art. I § 9; State v. Graham, 153 Wash.2d 400, 404, 103 P.3d 1238 (2005).
[10] State v. Calle, 125 Wash.2d 769, 777, 888 P.2d 155 (1995).
[11] See Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932); In re Pers. Restraint of Orange, 152 Wash.2d 795, 815, 100 P.3d 291 (2004); Calle, 125 Wash.2d at 777, 888 P.2d 155; United States v. Dixon, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993).
[12] See RCW 9A.72.110.
[13] See RCW 9.61.230.
[14] State v. Meridieth, 144 Wash.App. 47, 180 P.3d 867 (2008).
[15] RAP 10.10(c).