238 P.3d 495 (2010)
STATE of Washington, Respondent,
v.
Andre Toi MENESES, Petitioner.
No. 83172-6.
Supreme Court of Washington, En Banc.
Argued June 22, 2010.
Decided August 26, 2010.
*496 Elizabeth McNeely Albertson, Gregory Charles Link, Washington Appellate Project, Seattle, WA, for Petitioner.
Dennis John McCurdy, King County Prosecutor's Office, Seattle, WA, for Respondent.
STEPHENS, J.
¶ 1 Andre Toi Meneses appeals his numerous convictions for telephone harassment and witness intimidation. A jury convicted Meneses after he repeatedly phoned Jamila Willis to curse at her, threaten her, and otherwise intimidate her. Meneses argues that the trial court omitted an essential mens rea element in its instructions to the jury, that his convictions for both telephone harassment and intimidating a witness arising from the same phone call violated double jeopardy, and that the trial court erred by failing to instruct the jury on the lesser included offense of witness tampering. We find no error and affirm Meneses's convictions.

FACTS AND PROCEDURAL HISTORY
¶ 2 Meneses and his ex-girlfriend, Willis, were involved in an ongoing dispute over Meneses's right to visit their seven-year-old son, who lived with Willis. State v. Meneses, 149 Wash.App. 707, 710-11, 205 P.3d 916 (2009). Meneses repeatedly called Willis to persuade her to let him see his son, leaving messages on her voice mail account. The messages contain "incredibly vile language, including racial slurs and descriptive obscenities." Id. at 711, 205 P.3d 916; see also State's Ex. 1 (transcription of the messages).[1] In these messages, Meneses frequently threatens to kill Willis, her current boyfriend, Andre Prim, and the couple's infant child. Meneses, 149 Wash.App. at 711, 205 P.3d 916. He touts his connection to the Filipino Mafia, boasting that he and his family would enjoy hurting Willis, and at one point suggests that his confederates have surrounded Willis's workplace and are going to attack her. In two of the messages, Meneses warns Willis not to press charges. Id.
¶ 3 Willis eventually reported Meneses's behavior to the police, who recorded 10 of the voice mail messages. Id. The King County prosecutor charged Meneses with four counts of felony telephone harassment, four counts of gross misdemeanor telephone harassment, *497 and two counts of intimidating a witness. Id. At trial, the jury heard the recorded messages and other testimony, including testimony from Willis. Meneses argued that his calls were angry rants, not threats, as evidenced by the fact that Willis and Prim were not frightened by them. Id. He asked the trial court to instruct the jury on the crime of tampering with a witness, a lesser included offense of intimidating a witness. Id. at 714, 205 P.3d 916. The trial court refused, concluding that there was no evidence of witness tamperingonly of threats that would constitute intimidating a witness if found to exist by the jury. Verbatim Report of Proceedings (VRP) (Sept. 26, 2007) at 100. The jury convicted Meneses on all counts. Meneses, 149 Wash.App. at 711, 205 P.3d 916.
¶ 4 Meneses appealed, challenging the trial proceedings on several grounds. See Appellant's Opening Br. at i-iv. One of Meneses's contentions was that the jury instructions failed to include an essential mens rea element of telephone harassment: that Meneses form the intent to harass before making the phone call. Id. at 8-11. He also contended that it violated double jeopardy to convict him of both intimidating a witness and telephone harassment in counts II and III, respectively, because the counts derived from the same phone message. Id. at 35-40. A third contention was that the trial court erred by refusing to instruct the jury on the lesser included offense of witness tampering. Id. at 25-29. The Court of Appeals disagreed on these and other grounds and affirmed Meneses's convictions. Meneses, 149 Wash.App. at 713-16, 205 P.3d 916. We granted review on these issues only. State v. Meneses, 167 Wash.2d 1008, 220 P.3d 783 (2009); Wash. Supreme Court Order Granting Review, State v. Meneses, No. 83172-6, 167 Wash.2d 1008, 220 P.3d 783 (Nov. 6, 2009).

ANALYSIS

1. Instruction on Mens Rea
¶ 5 Meneses argues that the jury instructions omitted an essential element of the crime of telephone harassment under RCW 9.61.230, namely, that the intent to harass be formed at the outset of the call. We have previously held that the intent to harass must be formed when the defendant places the call. State v. Lilyblad, 163 Wash.2d 1, 13, 177 P.3d 686 (2008). In reaching this conclusion, we abrogated a Court of Appeals decision that had construed RCW 9.61.230 to criminalize calls even when the defendant formed the intent to harass during the call. Id. at 8, 12-13, 177 P.3d 686 (abrogating City of Redmond v. Burkhart, 99 Wash.App. 21, 991 P.2d 717 (2000)). We held that such an interpretation is contrary to the plain language of the statute, which requires that the call be "made" with intent to harass or intimidate. Id. at 8-9, 177 P.3d 686. To make a telephone call means to place the call, we said, so the requisite mens rea must be formed when the defendant places the call. Id. at 10, 177 P.3d 686; see also id. at 12, 177 P.3d 686 (calling the statute's meaning "unambiguous").
¶ 6 This definition of telephone harassment was given to the jury:
A person commits the crime of Telephone Harassment when he or she, with intent to harass or intimidate any other person, makes a telephone call to such other person threatening to inflict injury on the person called or any member of the family or household of the person called.
A person also commits the crime of Telephone Harassment when he or she, with the intent to harass or intimidate any other person, makes a telephone call to such other person threatening to kill that person or any other person.
Clerk's Papers (CP) at 71 (Jury Instruction 7) (emphasis added). The "to convict" instructions stated:
To convict the defendant of the crime of Telephone Harassment ... each of the following elements of the crime must be proved beyond a reasonable doubt:
1) That on or about [date,] the defendant placed a telephone call to Jamila Willis;

2) That the telephone call was made with the intent to harass or intimidate Jamila Willis;

*498 3) That the defendant threatened to kill [or inflict injury on, as appropriate] Jamila Willis[;] and
4) That the acts occurred in the State of Washington.
E.g., CP at 76 (Jury Instruction 12) (emphasis added).
¶ 7 An average juror hearing these instructions would interpret them to require that Meneses have the intent to intimidate or harass Willis when he "made" the call. Following our reasoning in Lilyblad, this means that he would have to form the intent before placing it. But, Meneses notes that before Lilyblad, Division One opined that making a telephone call includes the entire call, not merely the initial placing of the call. The phrase cannot be unambiguous if an appellate court previously interpreted it differently, he urges. This argument misses Lilyblad's point: we abrogated Division One's interpretation of the statute because, in an effort to follow the legislative intent, it contravened the plain meaning of the statute. Lilyblad, 163 Wash.2d at 8-10, 12, 177 P.3d 686. It is the jury instructions' ordinary meaning that matters.[2]See State v. Foster, 91 Wash.2d 466, 480, 589 P.2d 789 (1979) (upholding instructions if they are "readily understood and not misleading to the ordinary mind"). By requiring the call to be "made" with intent to harass, the instructions at Meneses's trial properly apprised the jury of the applicable law.

2. Double Jeopardy
¶ 8 Meneses argues that his convictions for both telephone harassment and intimidating a witness arising out of the same phone call violate double jeopardy. One of the purposes of the double jeopardy clause is to prevent multiple punishments for the same offense. State v. Freeman, 153 Wash.2d 765, 770, 108 P.3d 753 (2005). We must therefore determine whether the intimidating a witness conviction (count II) was the "same offense" as the telephone harassment conviction (count III). See id. at 771, 108 P.3d 753. This is a question of legislative intent: if the legislature intended to punish acts violating both statutes as two separate crimes, it does not violate double jeopardy to impose both punishments. Id.
¶ 9 Neither the telephone harassment nor the intimidating a witness statute contains an express provision or statement of intent that it should be punished separately. See RCW 9.61.230; 9A.72.110. Meneses contends that the legislature must expressly indicate its intent that multiple punishments apply; otherwise, the rule of lenity and the double jeopardy clause require that acts violating both statutes be punished only once. Suppl. Br. of Pet'r at 8-9 (citing Whalen v. United States, 445 U.S. 684, 691-92, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980)). The statement to that effect in Whalen followed from the Court's interpretation of a statutory provision, which provided that sentences for convictions should generally run consecutively when each conviction requires proof of a fact that the other does not. Whalen, 445 U.S. at 691, 100 S.Ct. 1432 (interpreting District of Columbia Code § 23-112 (1973) to codify the rule in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932)). From this provision, the Court deduced the contrapositive: when two convictions do not each require proof of a fact the other does not, consecutive punishments should be avoided. Id. at 692, 100 S.Ct. 1432. However, a statute explicitly providing for consecutive punishment could override this reasoning as to a specific crime. See id. at 694-95, 100 S.Ct. 1432. Whalen's rule is inapplicable here because, as discussed below, Meneses's crimes each required proof of a fact the other did not.
*499 ¶ 10 The Blockburger test is a means of divining legislative intent in the absence of a clear statement allowing or disallowing multiple punishments.[3]Freeman, 153 Wash.2d at 772, 108 P.3d 753. The Blockburger test inquires whether, as charged and proved at trial, the two offenses were the same in law and fact. It turns on whether each offense required proof of a fact that the other did not. Id.
¶ 11 Meneses asserts that his convictions for telephone harassment and intimidating a witness are the same in law and fact because the exact same act and intent, a single phone call made to Willis to threaten her, underlies both convictions. Suppl. Br. of Pet'r at 9-10. As charged and proved, Meneses says, the State showed that Meneses threatened Willis for the sole purpose of convincing her to let him see his son. This singular intent renders the charges the same in fact and law. Id.
¶ 12 Meneses misapplies the Blockburger test. The crimes of telephone harassment and witness intimidation are not the same because, in the context of this case, each required proof of a fact the other did not. The telephone harassment charge required Meneses to place a telephone call to Willis with the intent to harass or intimidate her; witness intimidation had no such element. Compare, e.g., CP at 76 (telephone harassment "to convict" instruction), with id. at 89 (intimidating a witness "to convict" instruction). The witness intimidation charge required Meneses to attempt to induce Willis to withhold information from the police; telephone harassment had no such element. Id. The different proof requirements render the two charges different in law. Cf. State v. Calle, 125 Wash.2d 769, 778, 888 P.2d 155 (1995) (holding that incest and second degree rape charges based on one act of intercourse were not the same offense because "[i]ncest requires proof of relationship; rape requires proof of force").
¶ 13 The offenses were also different in fact. Theoretically, the legal difference between the two offenses could have disappeared at trialfor example, if the State proved that, with intent to intimidate Willis into not talking to the police, Meneses called and threatened her. This is not how Meneses's case was tried, however.
¶ 14 The State's theory was that Meneses repeatedly phoned Willis to harass her into letting him see his son and, in addition, attempted to induce her not to tell the police about his conduct. See State's Ex. 1. The telephone harassment charges arose from numerous calls in which Meneses demanded that Willis give him access to his son. See id.; see also Suppl. Br. of Pet'r at 10 n. 5 (listing some of the demands). Along these lines, the prosecutor relied on Meneses's threat to steal Willis's baby for the telephone harassment charge in count III. For the witness intimidation charge in count II, however, the prosecutor relied on a statement made later in the phone message in which Meneses told Willis that if she pressed charges she would "see what happens." VRP (Sept. 25, 2007) at 10; VRP (Sept. 27, 2007) at 24-25, 29-30. In other words, a separate verbal act formed the basis for the witness intimidation count, which was prompted by a different motivationto prevent Willis from reporting Meneses's harassmentthan the act on which the harassment count was based. The offenses therefore were not the same in law or fact, and Meneses's double jeopardy challenge fails.

3. Lesser Included Offense Instruction
¶ 15 For the witness intimidation counts, Meneses assigns error to the trial court's failure to instruct the jury on the lesser included offense of tampering with a witness. A party is entitled to an instruction on a lesser included offense where (1) each element of the lesser offense is a necessary element of the greater offense charged (the legal prong), and (2) the evidence in the case *500 supports an inference that only the lesser crime was committed (the factual prong). State v. Berlin, 133 Wash.2d 541, 548, 947 P.2d 700 (1997).
¶ 16 Meneses and the State agree that witness tampering is legally a lesser included offense of intimidating a witness. "A person is guilty of intimidating a witness if a person, by use of a threat against a current or prospective witness, attempts to ... [i]nduce that person not to report the information relevant to a criminal investigation." RCW 9A.72.110(1)(d). "A person is guilty of tampering with a witness if he or she attempts to induce ... a person whom he or she has reason to believe may have information relevant to a criminal investigation ... [to] [w]ithhold from a law enforcement agency [that] information." RCW 9A.72.120(1)(c). For the former crime, "prospective witness" is defined in terms identical to the description of the victim in the latter crime. See RCW 9A.72.110(3)(b)(iii). Therefore, the only difference between the crimes is that witness intimidation requires an additional element: that the defendant use a threat.
¶ 17 The parties dispute whether the evidence supports the inference that Meneses committed only witness tampering. The trial court and Court of Appeals both found that there was evidence of a threat but no other inducement, so the jury would either convict of witness intimidation or acquit. VRP (Sept. 26, 2007) at 100; Meneses, 149 Wash. App. at 714, 205 P.3d 916.
¶ 18 Meneses counters that, although there was evidence of a threat, there was some question as to whether that threat was a "true threat." Suppl. Br. of Pet'r at 18. A "true threat" is a threat made under circumstances such that a reasonable speaker would foresee that it would be interpreted as a serious expression of intent to carry it out. See State v. J.M., 144 Wash.2d 472, 478, 28 P.3d 720 (2001). The jury instructions in Meneses's trial defined "threat" to mean a true threat. CP at 72 (Jury Instruction 8).[4] Meneses argues that, taking the evidence in the light most favorable to him, the jury might not have found a "threat" because Meneses was always making so-called threats on which he never acted. Willis and Prim knew that Meneses was not a Mafioso and so were not put in fear by his statements, he asserts. At trial, Meneses's counsel argued that the jury should consider Meneses's messages to be rants from someone angry about not seeing his son, not true threats.
¶ 19 The jury credited Willis's testimony that she took the statements in Meneses's voice mails to be threats and delayed reporting his statements to the police out of concern that Meneses would "try to take matters into his own hands." VRP (Sept. 26, 2007) at 40-44. This weighs against Meneses's argument that the threats were not uttered under circumstances suggesting they were serious. Furthermore, both witness tampering and witness intimidation required Meneses to "attempt to induce" Willis not to talk to the police, which entails that Meneses intended that his words would cause Willis to refrain from doing so. It is difficult to see how the jury could find that Meneses intended to influence Willis in this way through the use of threat-like rants that were not, in fact, threats. On the contrary, it is the frightening or coercive effect of a threat that Meneses would need and want to use to prevent Willis from reporting. The trial court's approach avoided Meneses's razor-thin distinction: either the jury would interpret Meneses's statements as threats and so convict him of witness intimidation, or they would find that his statements were not threats, find no attempted inducement, and acquit him. No affirmative evidence supported the idea that Meneses committed witness tampering but not intimidating a witness. Thus, the trial court was correct to refuse to instruct the jury on the lesser offense.

CONCLUSION
¶ 20 The jury instructions at trial adequately informed the jury of the applicable mens rea for telephone harassment. Meneses's *501 convictions for both telephone harassment and witness intimidation did not impose multiple punishments for the same offense in violation of double jeopardy protections. The evidence did not support a jury instruction on witness tampering as a lesser included offense of witness intimidation. We affirm the Court of Appeals.
WE CONCUR: BARBARA A. MADSEN, Chief Justice, CHARLES W. JOHNSON, GERRY L. ALEXANDER, RICHARD B. SANDERS, TOM CHAMBERS, SUSAN OWENS, MARY E. FAIRHURST, and JAMES M. JOHNSON, Justices.
NOTES
[1] Because the messages are offensive and their exact content is unnecessary to our decision, we decline to set them forth.
[2] This was true in Lilyblad as well. One of the instructions at Lilyblad's trial affirmatively stated that "`[m]ake a telephone call'" meant the entire call, not merely the initiation of the call. Lilyblad, 163 Wash.2d at 5, 177 P.3d 686. This instruction misstated the law and so required reversal. In contrast, the instructions here leave "make a call" to its ordinary meaning, which accords with the definition in Lilyblad. No magic words encapsulating Lilyblad's mens rea requirement are necessary, so long as the instructions as a whole apprise the jury of it. Of course, a more specific instruction is permissible. See, e.g., 11 Washington Practice: Pattern Jury Instructions: Criminal 36.72, at 655 (3d ed.2008) (requiring the proof "[t]hat at the time the defendant initiated the phone call the defendant intended to harass" the victim (emphasis added)).
[3] There are other tools for divining legislative intent, such as the merger rule. See Freeman, 153 Wash.2d at 771-73, 108 P.3d 753 (outlining a full double jeopardy analysis). Here, however, the Blockburger test is evidence enough that the offenses were different. See State v. Calle, 125 Wash.2d 769, 780, 888 P.2d 155 (1995) ("[W]e regard the Blockburger and same evidence tests as significant indicators of legislative intent.... [T]he presumption accorded to statutes by these rules should be overcome only by clear evidence of contrary intent.").
[4] The State argues that the "true threat" requirement applies only to crimes regulating pure speech, which the crimes in this case are not. This argument is irrelevant because the definition of "threat" here matched a true threat, so the true threat requirement was grafted onto the threat element of the intimidating a witness charge.