FILED
COURT OF APPEALS
DIVISION II

2014 MAY -6 AM 8:29

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                 Respondent,<br><br>   v.<br><br>RAYNARD SANTOS CHARGUALAF,<br><br>                 Appellant. | No. 43502-1-II<br><br><br>UNPUBLISHED OPINION |

WORSWICK, C.J. — A jury found Raynard Chargualaf guilty of first degree burglary, first degree robbery, second degree unlawful possession of a firearm, and four counts of first degree kidnapping. Chargualaf appeals his convictions, arguing that (1) the prosecutor committed misconduct by vouching for the credibility of witnesses and (2) his counsel was ineffective for failing to object to the vouching. In a pro se statement of additional grounds, Chargualaf argues that his counsel was also ineffective for failing to request a jury instruction on second degree kidnapping as a lesser included offense. We hold that Chargualaf's prosecutorial misconduct claim is waived because he did not object at trial. Additionally we hold that his ineffective assistance of counsel claims fail. We affirm.

## FACTS

Raynard Chargualaf and four codefendants—Rosamond Watts, Sierra Watts, Cliffton Darrow, and Duane Brunson—were charged for their involvement in a home invasion robbery. Each of Chargualaf's co-defendants pleaded guilty and agreed to testify for the State. Chargualaf took his case to trial.

A.    *The Offenses*

Sharon Heim, John Heim, Patrick McCleary, and David Heibert lived on a residential property in Mason County near Belfair. Shortly after dark on an evening in November 2011, four masked men with guns entered the Heims' house. At gunpoint, the men moved Sharon Heim, John Heim, and McCleary into the living room. Heibert was outside before the gunmen entered; they tied him up at gunpoint and forced him to the ground outside.

From inside the house, the men took a purse containing $5,200 in cash, as well as jewelry, a DVD (digital video disk) player, and prescription medication. The mask worn by one gunman slipped down, and John Heim later identified this gunman as Chargualaf. The gunmen then left in a truck.

Meanwhile, Heibert freed himself, called 911 from a neighbor's house, and described a vehicle he believed the gunmen had driven. A nearby police officer was dispatched and saw a gold car and a pickup truck drive away from the scene. The gold car was driven by Sierra Watts, who had acted as a lookout. All four gunmen rode in the pickup truck.

When the gunmen saw the police officer, Chargualaf and Brunson exited the truck and began running. Chargualaf ran in front of the police car, carrying a handgun. The police officer pursued Chargualaf and arrested him.

The State charged Chargualaf with seven counts: first degree burglary, first degree robbery, four counts of first degree kidnapping, and second degree unlawful possession of a firearm. The State sought firearm enhancements for the first six counts.

B.    *The Co-Defendants' Testimony*

The State called all four of Chargualaf's co-defendants as witnesses. At the outset of direct examination, the State (1) elicited testimony that each co-defendant testified pursuant to a plea agreement and (2) asked each co-defendant to list the charges to which he or she pleaded guilty.

With respect to the witnesses' plea agreements, Chargualaf's counsel approached cross-examination differently for each witness. During cross-examination of Rosamond Watts, Chargualaf's counsel used the plea agreement for impeachment. Chargualaf's counsel also mentioned the plea agreement during cross-examination of Sierra Watts. But Chargualaf's counsel did not mention plea agreements while cross-examining Darrow or Brunson.

Despite Chargualaf's counsel not mentioning the plea agreement during his cross-examination of Darrow or Brunson, the State, on re-direct examination of all four co-defendants, elicited further testimony that the plea agreement required each co-defendant to give truthful testimony. In addition, the State asked each witness for his or her understanding of what would happen if the testimony was not truthful; each witness stated or implied that his or her plea agreement would be revoked and the punishment would be harsher. Chargualaf's counsel did not object.

C.    *Judgment*

The jury found Chargualaf guilty on all seven counts and further found in special verdicts that the State proved facts supporting the firearm enhancements. The trial court sentenced Chargualaf accordingly.

Chargualaf appeals.

No. 43502-1-II

## ANALYSIS

### I. PROSECUTORIAL MISCONDUCT

Chargualaf first argues that vacation of his convictions is warranted because the prosecutor committed misconduct by vouching for the credibility of the four co-defendant witnesses. We hold that Chargualaf failed to preserve this argument for review.

Prosecuting attorneys are quasi-judicial officers charged with the duty of ensuring that a defendant receives a fair trial. *State v. Boehning*, 127 Wn. App. 511, 518, 111 P.3d 899 (2005). Prosecutorial misconduct violates that duty and can constitute reversible error. *State v. Davenport*, 100 Wn.2d 757, 762, 675 P.2d 1213 (1984); *see Smith v. Phillips*, 455 U.S. 209, 219, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982). We reverse a conviction when the defendant meets his burden of establishing that (1) the prosecutor acted improperly and (2) the prosecutor's improper act prejudiced the defendant. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012).

A defendant who fails to object to the prosecutor's improper act at trial waives any error, unless the act was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice. *State v. Thorgerson*, 172 Wn.2d 438, 443, 258 P.3d 43 (2011); *see State v. Case*, 49 Wn.2d 66, 76, 298 P.2d 500 (1956). In making that determination, we "focus less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured." *Emery*, 174 Wn.2d at 762. Because Chargualaf did not object to any vouching, we must consider what would have happened if he had objected. *See Emery*, 174 Wn.2d at 763.

4

Here, the prejudice resulting from any improper vouching could have been cured if Chargualaf had objected. References to a plea agreement requiring truthful testimony "may amount to a *mild* form of vouching." *State v. Ish*, 170 Wn.2d 189, 197, 241 P.3d 389 (2010) (lead opinion) (emphasis added). The prejudice resulting from these references could have been cured by an instruction directing the jury to disregard both the prosecutor's question and the witness's answer. *State v. Stith*, 71 Wn. App. 14, 20, 856 P.2d 415 (1993) (holding that such an instruction could have cured the prejudice occurring when a prosecutor, on cross-examination of a defendant, improperly asked whether police witnesses were lying). Because the resulting prejudice could have been cured, Chargualaf waived his claim that the prosecutor violated his right to a fair trial by vouching for the witnesses. *See Thorgerson*, 172 Wn.2d at 443.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Chargualaf also argues that he received ineffective assistance of counsel when his attorney failed to object to the prosecutor's vouching. We disagree.

Whether a defendant received ineffective assistance of counsel is a mixed question of law and fact, which we review de novo. *In re Pers. Restraint of Fleming*, 142 Wn.2d 853, 865, 16 P.3d 610 (2001). In reviewing claims of ineffective assistance, we begin with a strong presumption of counsel's effectiveness. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

When claiming ineffective assistance of counsel, a defendant must satisfy the two-pronged test announced in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987). First, the defendant must show that counsel's performance was deficient, meaning that it fell below an

objective standard of reasonableness under all the circumstances. *Thomas*, 109 Wn.2d at 225-26. Second, the defendant must show that the deficient performance prejudiced the defendant's case. *Thomas*, 109 Wn.2d at 225. A failure to satisfy either prong is fatal to an ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 700.

Chargualaf fails to satisfy *Strickland*'s prejudice prong. Prejudice occurs if there is a reasonable probability that the result of the proceeding would have been different, had the deficient performance not occurred. *Thomas*, 109 Wn.2d at 226. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Counsel's failure to object to the "truthful testimony" remarks is not sufficient to undermine confidence in the outcome of Chargualaf's trial. One of the victims identified Chargualaf as the gunman whose mask slipped off during the robbery. In addition, the police officer who arrested Chargualaf also identified Chargualaf as the man who ran in front of the police car carrying a handgun. Chargualaf did not call any witnesses, present an alibi, or argue any affirmative defenses. Although the prosecutor's references to truthful testimony were arguably improper, under the circumstances of this case counsel's failure to object does not undermine confidence in the outcome of Chargualaf's trial.[1]

Thus, Chargualaf fails to satisfy *Strickland*'s prejudice prong. Because Chargualaf has failed to show prejudice, we do not consider whether his counsel's performance was deficient. *Strickland*, 466 U.S. at 700.

---

[1] Both the prosecutor and Chargualaf's trial counsel made a record in anticipation of a future ineffective assistance argument. The record shows that, before the trial, Chargualaf rejected a plea agreement proposed by the State.

No. 43502-1-II

## STATEMENT OF ADDITIONAL GROUNDS

In his pro se statement of additional grounds, Chargualaf further argues that he received ineffective assistance of counsel because his counsel failed to request a jury instruction on second degree kidnapping as a lesser offense included in first degree kidnapping. Again, we disagree.

When an ineffective assistance claim is based on counsel's failure to request a jury instruction, the claim cannot succeed unless the defendant shows that he was entitled to the instruction. *State v. Thompson*, 169 Wn. App. 436, 495, 290 P.3d 996 (2012), *review denied*, 176 Wn.2d 1023 (2013). A lesser included instruction is required only when the offenses and the evidence satisfy the two-pronged *Workman* test, consisting of a legal prong and a factual prong. *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978).

The legal prong is satisfied where, as here, each element of the lesser offense is also an element of the greater offense. *State v. Meneses*, 169 Wn.2d 586, 595, 238 P.3d 495 (2010). The factual prong is satisfied if the evidence would permit a jury to rationally find the defendant guilty of the lesser offense but acquit the defendant of the greater offense. *State v. Fernandez-Medina*, 141 Wn.2d 448, 456, 6 P.3d 1150 (2000). When determining whether the evidence satisfies the factual prong, we view the evidence in the light most favorable to the party requesting the lesser included instruction. *Fernandez-Medina*, 141 Wn.2d at 455-56.

Even viewed in the light most favorable to Chargualaf, the evidence here fails to satisfy the factual prong. When a kidnapping is done to facilitate the commission of any felony, it is a first degree kidnapping. RCW 9A.40.020(1)(b). A jury could not have rationally found that Chargualaf committed a kidnapping during this home invasion robbery unless it was done to

7

No. 43502-1-II

facilitate the commission of other felonies. Therefore Chargualaf was not entitled to the lesser included instruction. Chargualaf's claim of ineffective assistance fails.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, C.J.

We concur:

Johanson, J.

Lee, J.