# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50924-5-II |
| Respondent, | |
| v. | |
| GEORGE MICHAEL CHAPA, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — George Michael Chapa pleaded guilty to one count of child molestation in the first degree. He appeals the denial of a Special Sex Offender Sentencing Alternative (SSOSA) disposition and his community custody conditions.

Chapa argues he should get a new sentencing hearing because the trial court erroneously gave "great weight" to the testimony of the victim's biological mother, Marisa Blair. At the time of sentencing, she no longer had parental rights over the victim. Chapa also argues that six of his community custody conditions are either unconstitutionally vague, overbroad, or not crime related.

We conclude that Chapa's challenge to Blair's testimony is unpreserved. We affirm Chapa's conviction but remand to the trial court to correct the scrivener's error and strike condition 17 and condition 20 (in part) of the judgment and sentence.

FACTS

I.   INCIDENT

In the early morning of June 15, 2015, Blair reported finding inappropriate photographs of her four-year-old daughter, AW, on her boyfriend's, Chapa's, cell phone. The State charged Chapa

with one count of possession of depictions of minor engaged in sexually explicit conduct in the second degree.

The Bremerton Police Department's investigation found 234 files on Chapa's computer depicting children engaged in sexually explicit conduct. AW appeared in approximately one third of the files.

Blair submitted a victim impact statement with the court, asking that Chapa receive the maximum sentence. At that time, AW had been adopted, and Blair could only see her four times a year.[1]

Approximately two years after the incident, the State filed an amended information charging Chapa with one count of child molestation in the first degree. On the same day, Chapa pleaded guilty to the charge.

II.     SENTENCING

Chapa requested a SSOSA. He underwent both a psychosexual evaluation and a presentence investigation (PSI). Dr. Haley D. Gummelt, Ph.D., completed Chapa's psychosexual evaluation and recommended a SSOSA disposition. This recommendation took into account the inconsistencies between Chapa's statements that the incident in question involved an isolated event and the fact that Chapa's computer yielded 234 additional pictures and videos of minors engaged in sexually explicit conduct. The Department of Corrections (DOC) completed the PSI and recommended against a SSOSA disposition; however, DOC did not have access to Chapa's psychosexual evaluation at the time.

---

[1] In Washington, adoption is a two-step process: the rights and obligations of existing legal parents must be terminated before new legal parental relationships can be established. 21 SCOTT J. HORENSTEIN, WASHINGTON PRACTICE: FAMILY AND COMMUNITY PROPERTY LAW §§ 44:1, 44:10 (2d ed. 2015). *See generally* ch. 26.33 RCW.

The State opposed a SSOSA disposition and argued for a sentence of 59 months, which fell in the middle of the standard range. The State argued that Chapa had shown no remorse, extremely minimized his behavior, and ultimately took no accountability for his actions.

Chapa submitted a sentencing memorandum. He argued that he met SSOSA's statutory requirements. CP at 42. Additionally Chapa argued that while "the court is required to give great weight to the victim when considering whether or not to grant a SSOSA" sentence, the particular facts of this case dictated that less weight be given to the victim. Clerk's Papers (CP) at 43. For example, Chapa argued that Blair, knowing Chapa's guilt, continued to support him. It also outlined Blair's domestic violence history with Chapa, including an assault in the fourth degree charge against Chapa as the protected party. Chapa's memorandum also disputed many of the facts contained in the PSI, including that Chapa never violated the conditions of his release in this case, and that fourteen of the sixteen no contact orders to which Chapa was involved had him as a protected party.

Both Blair and her mother spoke at Chapa's sentencing hearing. As the court later recognized, Blair gave a "very impassioned presentation" regarding why Chapa should not receive a SSOSA disposition. Report of Proceedings (RP) (Aug. 28, 2017) at 20. Blair's mother did not make an ultimate recommendation regarding a SSOSA, but described her negative perceptions about Chapa based on specific instances.

Chapa then advocated for a SSOSA disposition. Chapa initially conceded, in relevant part,

> You know, you do have a recommendation from the victim's mother recommending against a SSOSA, recommending prison time. And I do recognize that the statute requires that the Court does give some great weight to that opinion.

RP (Aug. 28, 2017) at 12-13. Generally, Chapa iterated the information in his sentencing memorandum. Chapa highlighted his compliance with the court's conditions of release, which he

argued indicated, along with other factors, that he would comply with the SSOSA conditions should the court grant his request.

In Chapa's statement, he expressed his regret and acknowledged that he would "forever live with the shame, guilt, and remorse." RP (Aug. 28, 2017) at 19. He promised to "follow through with [SSOSA] treatment to it's [sic] fullest extent." RP (Aug. 28, 2017) at 20.

The court considered all of the reports and testimony and said,

> I did hear a very impassioned presentation from the victim's mother, who obviously is very opposed to a SSOSA.
> . . . .
> I am still looking at the statute. I'm constrained by the statute. And so, first of all, I do consider the victim's opinion. And according to the statute, that holds great weight in what this Court does. So I would have to find something very, very compelling for me to overcome that.

RP (Aug. 28, 2017) at 20-21. The court expressed further concerns regarding Gummelt's psychosexual evaluation, in particular the fact that Chapa passed a polygraph examination and then the police found additional images and videos on his computer, and that Gummelt regarded Chapa as a "moderate risk" for reoffending. RP (Aug. 28, 2017) at 21. Finally, the court found Chapa's testimony disingenuous. RP (Aug. 28, 2017) at 22 ("I have to really concern myself with true intention and true motivation."). The court sentenced Chapa to a low-end standard range sentence of 51 months. It stated, "So in reviewing all the factors, I cannot find that this Court should override the victim's opinion. And there is risk to the community." RP (Aug. 28, 2017) at 22.

ANALYSIS

I.     BLAIR AS A "VICTIM"

Chapa argues that the trial court abused its discretion by denying his SSOSA application as a result of giving Blair's testimony "great weight."

Generally, we will not review an issue raised for the first time on appeal. RAP 2.5(a). A party must make a timely and specific objection at trial unless the error constitutes a "manifest error affecting a constitutional right." RAP 2.5(a)(3). When the defendant fails to object to an alleged error at trial, he "has the initial burden of showing that (1) the error was 'truly of constitutional dimension' and (2) the error was 'manifest.'" *State v. Grimes*, 165 Wn. App. 172, 185-86, 267 P.3d 454 (2011) (quoting *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009)).

Chapa fails to meet his burden of showing that his denial of a SSOSA disposition is a manifest error affecting a constitutional right because he makes no such argument. Instead, Chapa argues that "illegal or erroneous sentences may be challenged for the first time on appeal." Reply Br. of Appellant at 1. He contends that erroneous sentences may be challenged for the first time on appeal and his sentence is erroneous because the court gave "great weight" to Blair's testimony. We disagree.

Case law does not support Chapa. The parties dedicate substantial briefing under the assumption that *State v. Ford*, 137 Wn.2d 472, 477, 973 P.2d 452 (1999) ("[I]llegal or erroneous sentences may be challenged for the first time on appeal."), *superseded by statute on other grounds*, LAWS OF 2008, ch. 231 § 4, *as recognized in State v. Cobos*, 182 Wn.2d 12, 15-16, 338 P.3d 283 (2014), provides an independent doctrine of preservation for sentencing errors. It does not. In *Ford*, the appellant challenged his sentence, arguing that the trial court misclassified three California convictions and therefore miscalculated his offender score. 137 Wn.2d at 475-76. The

state argued that Ford did not preserve the issue because he did not raise the issue at the sentencing hearing. *Ford*, 137 Wn.2d at 478-79. In rejecting the state's argument, the Supreme Court recognized that, under the Sentencing Reform Act (SRA), the state bears the burden to show both the existence of out-of-state convictions and that those convictions would be felonies under Washington law. *Ford*, 137 Wn.2d at 480. But in *Ford*, the state offered no evidence at sentencing to support the classification of the California convictions as Washington felonies. 137 Wn.2d at 478, 481. The court held that requiring a criminal defendant to object to the absence of the state's evidence regarding such convictions—when the state bears the burden—would violate "fundamental principles of due process." *Ford*, 137 Wn.2d at 481.

As interpreted by the Supreme Court, *Ford* stands for the proposition that sentencing errors "may be raised for the first time on appeal because sentencing can implicate fundamental principles of due process if the sentence is based on information that is false, lacks a minimum indicia of reliability, or is unsupported in the record." *State v. Jones*, 182 Wn.2d 1, 6, 338 P.3d 278 (2014). Thus, *Ford* merely recognizes that many, but not all, sentencing errors may be reviewed for the first time on appeal because they implicate a constitutional right under RAP 2.5(a)(3). *See State v. Blazina*, 182 Wn.2d 827, 833-34, 344 P.3d 680 (2015) (rejecting appellant's argument that *Ford* stands for the proposition that sentencing issues, if "erroneous," are appealable as a matter of right). Therefore, *Ford* simply collapses into RAP 2.5(a)(3).

Because Chapa has not carried his burden to show that his denial of a SSOSA disposition constitutes manifest constitutional error, the issue is neither preserved nor appealable as a right. Therefore, we affirm the trial court and do not reach the issue of whether Blair was a "victim."

II.     SCRIVENER'S ERROR

The parties agree that the trial court intended to sign appendix H of DOC's PSI and attach it to Chapa's judgment and sentence. The remedy for clerical or scrivener's errors in judgment and sentence forms is to remand to the trial court for correction. CrR 7.8(a); *see* RAP 7.2(e). In addition, the trial court intended to modify condition 28, adding "unless and until permitted by sexual deviancy counselors." RP (Aug. 28, 2017) at 23. We remand for the trial court to correct the scrivener's error.

III.    COMMUNITY CUSTODY CONDITIONS

Chapa challenges six community custody conditions, either as vague, overbroad, and/or not crime related. The State concedes that we should strike three of the six.

A.      Legal Principles

We review de novo whether the trial court had statutory authority to impose a sentencing condition. *State v. Johnson*, 180 Wn. App. 318, 325, 327 P.3d 704 (2014). If the trial court had statutory authority, we review its decision to impose the condition for an abuse of discretion. *State v. Irwin*, 191 Wn. App. 644, 652, 364 P.3d 830 (2015). Imposing an unconstitutional condition is always an abuse of discretion. *Irwin*, 191 Wn. App. at 652.

Vague community custody conditions violate due process under the Fourteenth Amendment to the United States Constitution and article I, section 3 of the Washington Constitution. *Irwin*, 191 Wn. App. at 652-53. A community custody condition is unconstitutionally vague if either "(1) it does not sufficiently define the proscribed conduct so an ordinary person can understand the prohibition or (2) it does not provide sufficiently ascertainable standards to protect against arbitrary enforcement." *State v. Padilla*, 190 Wn.2d 672, 677, 416 P.3d 712 (2018). However, a condition need not identify prohibited conduct with complete

certainty. *Padilla*, 190 Wn.2d at 677. Unlike statutes challenged on vagueness grounds, there is no presumption of validity for sentencing conditions. *State v. Sanchez Valencia*, 169 Wn.2d 782, 793, 239 P.3d 1059 (2010).

In addition to the traditional vagueness standard, for custody conditions "concern[ing] material protected under the First Amendment [of the United States Constitution], a vague standard can cause a chilling effect on the exercise of sensitive First Amendment freedoms." *State v. Bahl*, 164 Wn.2d 739, 753, 193 P.3d 678 (2008). Limitations upon fundamental rights are permissible, provided they are imposed sensitively. *Bahl*, 164 Wn.2d at 757. A defendant's First Amendment right may be restricted if reasonably necessary to accomplish the essential needs of the state and public order. *Bahl*, 164 Wn.2d at 757. Thus, conditions may be imposed that restrict First Amendment rights if reasonably necessary, but they must be sensitively imposed. *Bahl*, 164 Wn.2d at 757.

The SRA[2] provides that "[a]s a part of any sentence, the court may impose and enforce crime-related prohibitions and affirmative conditions." Former RCW 9.94A.505(8) (2015). A "crime-related prohibition" is an "order of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted." Former RCW 9.94A.030(10). "'Directly related' includes conditions that are 'reasonably related' to the crime." *Irwin*, 191 Wn. App. at 656 (quoting *State v. Kinzle*, 181 Wn. App. 774, 785, 326 P.3d 870 (2014)). We review "the factual bases for crime-related conditions under a 'substantial evidence' standard." *Irwin*, 191 Wn. App. at 656. Community custody "conditions are usually upheld if reasonably crime related." *State v. Warren*, 165 Wn.2d 17, 32, 195 P.3d 940 (2008).

---

[2] This court applies the statute in effect when the offense was committed—here, the SRA in effect on June 15, 2015. *State v. Munoz-Rivera*, 190 Wn. App. 870, 891 nn.3-4, 361 P.3d 182 (2015).

8

B.    Places Where Minors Congregate

Chapa argues the term "where minors congregate" is unconstitutionally vague and argues that the terms "malls" and "fast food restaurants" are overbroad. The State concedes that the prohibition on "fast food restaurants" should be stricken. We disagree.

Condition 13 provides that Chapa "[s]hall not frequent places where minors congregate including parks, playgrounds, schools, campgrounds, arcades, malls, daycare establishments and/or fast food restaurants." CP at 40.

The term "where minors congregate" is not unconstitutionally vague when accompanied by an illustrative list because the condition as a whole defines the prohibited conduct with sufficient definiteness that ordinary people can understand what conduct is proscribed. *See Bahl*, 164 Wn.2d at 752-53.

*Irwin* held that absent "some clarifying language or an illustrative list of prohibited locations," a condition which prohibited the defendant from "'frequent[ing] areas where minor children are known to congregate, as defined by the supervising CCO,'" failed to provide ordinary people fair warning of the conduct proscribed. 191 Wn. App. at 652, 655. In general, we have relied on *Irvin*'s reasoning to uphold community custody conditions that prohibit defendants from frequenting places where children congregate if the condition contains an illustrative list. *See Wallmuller*, ___Wn. App. 2d ___, 423 P.3d 282, 285-290 (2018) (Lee, J., dissenting) (discussing cases).[3]

The condition here provided an illustrative list of areas Chapa was prohibited from frequenting. By including this list, the condition provided Chapa with sufficient notice to

---

[3] The majority in *Wallmuller* concluded that the term "where minors congregate" is unconstitutionally vague even though the condition there contained an illustrative list of prohibited locations. 423 P.3d at 284-85. We disagree with *Wallmuller*'s conclusion.

understand the proscribed conduct, and therefore, the condition is not unconstitutionally vague. *Irwin*, 191 Wn. App. at 655.

Neither the term "malls" nor "fast food restaurants" is overbroad. Chapa may be restricted from frequenting certain places where children congregate, including "malls" and "fast food restaurants," because the restrictions are clear and reasonably necessary to accomplish essential state needs and public order, and are sensitively imposed. *See Bahl*, 164 Wn.2d at 757.

Accordingly, we conclude that the trial court did not abuse its discretion by imposing this condition.

C.      Places Where Sexual Entertainment Is Provided

Chapa argues that the prohibition on locations providing sexual entertainment must be stricken because it is not crime related. The State concedes that, because there is nothing in the record indicating that Chapa attended such locations, the condition is not crime related and should be stricken. We disagree.

Condition 15 prevents Chapa from "enter[ing] places where sexual entertainment is provided, including but not limited to adult bookstores, arcades, and topless establishments." CP at 40.

The Supreme Court recently held that a prohibition on "sex-related businesses" was sufficiently crime related although "nothing in the record suggest[ed] that [the defendant] met her victim in a 'sex-related business' or that her presence in such a business played a role in her crimes." *State v. Hai Minh Nguyen*, ___ Wn.2d ___, 425 P.3d 847, 855 (2018). The court reasoned that the condition is crime related, even if there is nothing in the record indicating that the defendant visited such locations, because the condition is about controlling sexual offenders'

deviant impulses. *See Hai Minh Nguyen*, 425 P.3d at 855 ("[The defendant's] crimes have as much to do with her inability to control her sexual urges as they do with her access to minors.").

Although there is no evidence that Chapa frequents such establishments, *Hai Minh Nguyen* provides that this condition is about maximizing rehabilitation and preventing future sex offenses, and is therefore crime related. Accordingly, we reject that State's concession and conclude that the trial court did not abuse its discretion by imposing this condition.

D.     Sexually Explicit Materials

Chapa argues that the prohibition on sexually explicit materials must be stricken because it is unconstitutionally vague. His argument is two-fold: that the term itself is unconstitutionally vague, and that it is unconstitutionally vague because it permits his therapist and/or community corrections officer (CCO) to define the term. We disagree.

Condition 16 provides that Chapa "[s]hall not own, use, possess or peruse sexually explicit materials or access devices where these materials may be viewed, including computers, without authorization from the CCO and/or therapist." CP at 40.

With respect to Chapa's first argument, *Hai Minh Nguyen* is dispositive. There, the Supreme Court held that the term "sexually explicit materials" is not unconstitutionally vague. *Hai Minh Nguyen*, 425 P.3d at 852.

Chapa's second argument also fails because his CCO is not defining the term but rather telling Chapa what he is authorized to use, possess, or peruse. We have struck community custody conditions for affording CCOs boundless discretion. *See, e.g.*, *State v. Magana*, 197 Wn. App. 189, 200-01, 389 P.3d 654 (2016) (striking down a condition that stated: "Do not frequent . . . establishments where children are known to congregate or other areas as defined by supervising CCO."). Here, the condition does not give Chapa's therapist and/or CCO boundless discretion to

vastly increase the scope of the prohibition. Accordingly, we conclude that the trial court did not abuse its discretion by imposing this condition.

E.    Geographic Restrictions and Curfews

Chapa appears to challenge only the curfew requirements of condition 17, arguing that it is not crime related. The State concedes that, because there are no facts in the record that support the curfew condition, the provision should be stricken as not crime related. We agree and accept the State's concession to strike the condition.

F.    Intimate, Romantic, or Sexual Relationships

Chapa argues that the condition is unconstitutionally vague because of the terms "intimate, romantic or sexual relationships." The State concedes that the provision should be stricken— namely that the words "intimate" and "romantic" are unconstitutionally vague and that, taking into account Chapa's other community custody conditions, what remains of condition 16 (i.e., the term "sexual relationships") is not crime related. We agree that "intimate" and "romantic" relationships are unconstitutionally vague, but we reject Chapa's argument regarding "sexual relationships."

Condition 20 prevents Chapa from "pursu[ing] intimate, romantic or sexual relationships without authorization from his/her CCO and/or therapist." CP at 40.

In *Hai Minh Nguyen*, the Supreme Court held that the term "dating relationship" in a community custody condition does not render the condition unconstitutionally vague. 425 P.3d at 853. However, the court recognized that a condition containing the term "significant romantic relationship" would be different. *Hai Minh Nguyen*, 425 P.3d at 853 (citing *United States v. Reeves*, 591 F.3d 77, 79, 81 (2d Cir. 2010)). Thus, the issue is whether a prohibition on "intimate, romantic or sexual relationships" is more analogous to the constitutional provision of "dating relationship" or the unconstitutional provision of "significant romantic relationship."

*Hai Minh Nguyen* distinguished the two provisions on the basis that one included "highly subjective qualifiers" like "significant" and "romantic," whereas a "date" is more definite and ascertainable based upon its common definition. 425 P.3d at 853.

Here, "romantic" is the same term that the Supreme Court (by way of *Reeves*) recognized as "highly subjective" and thus unconstitutionally vague. "Intimate" is defined as "of or relating to an inner character or essential nature." WEBSTER'S THIRD NEW INT'L DICTIONARY 1184 (2002). Thus, if "romantic" is highly subjective then "intimate" is even more so. However, "sexual" is defined as "having sex" or "involving sex." WEBSTER'S THIRD NEW INT'L DICTIONARY 2082. Thus, it appears that "sexual," when used in conjunction with the term "relationship" is more analogous to the provision at issue in *Hai Minh Nguyen* regarding "dating relationships." That is, there are not various interpretations of the term with each definition unique to the specific individual. *See Reeves*, 591 F.3d at 81. A sexual relationship has a common definition and an easily ascertainable time period—the persons are engaged in sex.

Accordingly, we strike the terms "intimate" and "romantic" from the condition because those terms are unconstitutionally vague. However, because Chapa did not challenge the provision on any grounds other than vagueness and because the term "sexual relationships" is not unconstitutionally vague, we uphold the rest of the condition.

G.      Forming Relationships with People with Children

Chapa argues that the term "relationship" is overbroad because the term, without a modifier, makes it "impossible to determine if the prohibition is on dating relationships, familial relationships, work-colleague relationship[s], student-teacher relationships, etc." Br. of Appellant at 15. Chapa contends that such a broad prohibition, absent a compelling state interest, is a violation of his First Amendment freedoms. We disagree.

Condition 21 prevents Chapa from "form[ing] relationships with individuals who have care or custody of minor children without authorization from the CCO and/or therapist." CP at 41.

In *Kinzle*, this court rejected appellant's vagueness and overbreadth challenges to a community custody condition that provided: Do not "date women nor form relationships with families who have minor children, as directed by the supervising [CCO]." 181 Wn. App. at 785. The court recognized that under RCW 9.94A.703(3)(b), the sentencing court has discretion to order an offender to refrain from "direct or indirect contact with the victim of the crime or a specified class of individuals." *Kinzle*, 181 Wn. App. at 785. Because the defendant's crime involved children he contacted through a social relationship with their parents, the court held the condition was reasonably necessary to protect the public. *Kinzle*, 181 Wn. App. at 785.

Here, the condition is not overbroad because Chapa's contact with AW occurred as a result of a relationship with her mother. Because Chapa used such a relationship to perpetrate his crime, the State has a strong interest to restrict Chapa from forming similar relationships in the future. *See Bahl*, 164 Wn.2d at 757. The condition is sensitively imposed because it is not absolute; it allows Chapa to form such relationships upon the approval of his CCO or therapist. *See Bahl*, 164 Wn.2d at 757. Accordingly, we conclude that the trial court did not abuse its discretion by imposing this condition.

STATEMENT OF ADDITIONAL GROUNDS

I.     BLAIR IS NOT A VICTIM

Chapa contends that the trial court erred in giving or appearing to give great weight to Blair's testimony at his sentencing hearing. Chapa's argument is duplicative to that made by his counsel and is addressed above. *See State v. Thompson*, 169 Wn. App. 436, 493, 290 P.3d 996

14

(2012) (Errors that have been thoroughly addressed by counsel are "not proper matters for [the] statement of additional grounds under RAP 10.10(a).").

## II.     NO CONTACT ORDERS

Chapa next appears to contend that there were factual errors in the DOC's PSI.  Although Chapa is not required to cite to the record or authority, he must still "inform the court of the nature and occurrence of alleged errors."  RAP 10.10(c); *State v. Meneses*, 149 Wn. App. 707, 716, 205 P.3d 916 (2009), *affirmed*, 169 Wn.2d 586 (2010).  Chapa's contention that DOC's PSI contained factual errors is not a ground for relief, and Chapa's trial counsel brought this alleged discrepancy to the court's attention below.  Accordingly, we reject Chapa's argument.

We affirm Chapa's conviction, but remand to the trial court to correct the scrivener's error and strike condition 17 and condition 20 (in part) of the judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

I concur:

_____
Johanson, J.

WORSWICK, J. (concur in part and dissent in part) — I agree with the majority decision in most respects. I write separately because I believe that the community custody condition providing, George Michael Chapa "[s]hall not frequent places where minors congregate including parks, playgrounds, schools, campgrounds, arcades, malls, daycare establishments and/or fast food restaurants," is unconstitutionally vague. Clerk's Papers at 40. And although I appreciate that an illustrative list can clarify an otherwise vague condition, *see State v. Bahl*, 164 Wn.2d 739, 752-53, 193 P.3d 678 (2008), the list here does not adequately clarify the condition. For the reasons cited in *State v. Wallmuller*, 4 Wn. App. 2d 698, 703, 423 P.3d 282 (2018), I would hold that the community custody condition is vague.

_____
Worswick, J.