**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

THE STATE OF WASHINGTON,　　　)
　　　　　　　　　　　　　　　　　)　　DIVISION ONE
　　　　　　　　　Respondent,　　　)
　　　　　　　　　　　　　　　　　)　　No. 73261-7-I
　　　　　v.　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)　　UNPUBLISHED OPINION
IBRAHIM SALEH ADAM,　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　　　Appellant.　　　　)　　FILED:  March 6, 2017
_____)

DWYER, J. — Ibrahim Adam appeals from the judgment entered on a jury's verdict finding him guilty of one count of felony stalking pursuant to RCW 9A.46.110. Adam contends that the trial court abused its discretion by finding him competent to stand trial. However, the record in this matter—including his active participation in his criminal case, his submissions to the court, and the evidence presented at his competency hearing—supports the trial court's conclusion that Adam was capable of understanding the criminal proceedings against him and assisting his attorney in preparing his defense. Accordingly, we affirm.

I

Adam was introduced to Shelia LaRose when she was appointed to represent him in a criminal case involving a charge of felony stalking. Adam pled guilty to the charge and LaRose withdrew from the case in July 2013. In August

2013, Adam was released from incarceration. For the next several months, he called LaRose on the telephone every day, sometimes multiple times per day, professing his love for her and his desire that she marry him. When LaRose told him to stop calling and began screening her calls, Adam began leaving voice mail messages for her. Given the persistent and obsessive nature of Adam's conduct, LaRose began to fear for her safety.

By February 2014, in addition to the persistent telephone calls and voice mail messages, Adam began appearing at LaRose's home, wherein she lived with her 11-year-old daughter. One of Adam's messages detailed that, over the past four months, he had been watching LaRose through the glass doors of her bedroom. His message also said that he had seen LaRose naked and that he wanted to touch her body. On another occasion shortly thereafter, a day after LaRose had walked to her mailbox with her daughter, LaRose received a voice mail message from Adam detailing that he had seen her with her daughter. LaRose reported Adam's conduct to the police.

The next day, Adam left a voice mail message discussing his knowledge of LaRose's cats, which she never permitted to go outside of her home. Later that same day, LaRose saw Adam standing outside of her house and staring at her through a gate outside. LaRose called 911 but the police were unable to locate Adam.

On the following day, Adam left a voice mail message stating that he wanted to leave LaRose a present. When LaRose left work later that day, she discovered a bag on her parked vehicle's roof. She immediately telephoned 911.

When she then attempted to leave the garage in which her vehicle was parked, Adam approached her from a stairwell, causing her to run away. The police later arrived but were again unable to locate Adam. When the police searched the bag, they found that it contained women's lingerie.

That night, LaRose arranged for her daughter to stay in a "safe house," with instructions not to leave, while LaRose stayed at home. Adam again appeared at her home, this time at 1:30 a.m. LaRose called 911 and, when the police were unable to locate Adam, she telephoned her ex-husband and asked him to stay overnight with her. He complied. That same early morning, Adam appeared at her home twice more, a rock was thrown through her bedroom window, and, a few hours later, Adam left LaRose a voice mail message stating that he had been hiding in the bushes when the police were looking for him and that he wanted to apologize about the window. In another voice mail message left that morning, Adam said that he had seen a man arrive at LaRose's home the previous night and that he would shoot and kill that man.

The next day, LaRose developed a plan to enable the police to arrest Adam. She arranged to meet with Adam at a coffee shop and had several of her colleagues accompany her there. When Adam arrived at the coffee shop, one of her colleagues called 911. Adam was arrested shortly thereafter.

Adam was charged with one count of felony stalking pursuant to RCW 9A.46.110.[1] The State, upon amended information, further alleged

---

[1] RCW 9A.46.110 reads in pertinent part:
(1) A person commits the crime of stalking if, without lawful authority and under circumstances not amounting to a felony attempt of another crime:

four aggravating factors pursuant to RCW 9.94A.535(3):[2] (1) the offense was part

of an ongoing pattern of abuse occurring over a prolonged period of time, (2) the

offense was committed shortly after Adam was released from incarceration,[3] (3)

---

(a) He or she intentionally and repeatedly harasses or repeatedly follows another person; and

(b) The person being harassed or followed is placed in fear that the stalker intends to injure the person, another person, or property of the person or of another person. The feeling of fear must be one that a reasonable person in the same situation would experience under all the circumstances; and

(c) The stalker either:

(i) Intends to frighten, intimidate, or harass the person; or

(ii) Knows or reasonably should know that the person is afraid, intimidated, or harassed even if the stalker did not intend to place the person in fear or intimidate or harass the person.

. . . .

(4) Attempts to contact or follow the person after being given actual notice that the person does not want to be contacted or followed constitutes prima facie evidence that the stalker intends to intimidate or harass the person. "Contact" includes, in addition to any other form of contact or communication, the sending of an electronic communication to the person.

(5)(a) Except as provided in (b) of this subsection, a person who stalks another person is guilty of a gross misdemeanor.

(b) A person who stalks another is guilty of a class B felony if any of the following applies: . . . (iii) the stalker has previously been convicted of a gross misdemeanor or felony stalking offense under this section for stalking another person.

[2] RCW 9.94A.535(3) reads in pertinent part:

(3) Aggravating Circumstances - Considered by a Jury - Imposed by the Court

Except for circumstances listed in subsection (2) of this section, the following circumstances are an exclusive list of factors that can support a sentence above the standard range. . . .

. . . .

(f) The current offense included a finding of sexual motivation pursuant to RCW 9.94A.835.

. . . .

(h) The current offense involved domestic violence, as defined in RCW 10.99.020, or stalking, as defined in RCW 9A.46.110, and one or more of the following was present:

(i) The offense was part of an ongoing pattern of psychological, physical, or sexual abuse of a victim or multiple victims manifested by multiple incidents over a prolonged period of time;

(ii) The offense occurred within sight or sound of the victim's or the offender's minor children under the age of eighteen years; or

. . . .

(t) The defendant committed the current offense shortly after being released from incarceration.

[3] Adam was released from jail in August 2013 after having been previously convicted of felony stalking. Adam's conduct that gave rise to the charge at issue began that same month.

the offense was committed for Adam's sexual gratification, and (4) the offense was committed within sight or sound of LaRose's minor child.

At the first superior court pretrial hearing, speaking through an interpreter, Adam sought to represent himself. The reason for the request, he said, was that he wished to personally interview the victim and see the documents exchanged in discovery in his case. He also said that, because his attorney was busy working on a trial on another case, he felt that his right to a speedy trial was being violated. The trial court, after engaging in a colloquy with Adam, granted his request. At a hearing shortly thereafter, however, Adam withdrew his request and the court re-appointed his attorney.

By the next hearing, Adam himself had requested in writing that his competency be evaluated. His attorney concurred. The trial court ordered that Adam be examined. The evaluating psychologist concluded that he was not competent to stand trial and so testified at a hearing. Nevertheless, taking into consideration the entire record at the time of the competency hearing and the evidence presented at the hearing, the trial court determined that Adam's evidence did not overcome the presumption of competency.

A jury found Adam guilty as charged. The jury was then asked to return special verdicts as to two of the alleged aggravating factors—that Adam committed the offense for purposes of sexual gratification and that he committed the offense within sight or sound of a minor child. The jury found that both allegations had been proved. Then, after additional evidence was presented, the jury was asked to reach determinations as to the remaining alleged aggravating

factors—that Adam committed the offense over a prolonged period of time and that he displayed rapid recidivism by committing the offense. The jury also found both allegations proved.

The trial court imposed an exceptional sentence of 84 months of imprisonment, specifically ruling that each of the four aggravating factors, standing alone, was sufficient to warrant the sentence imposed. The trial court also imposed 36 months of community custody. The trial court waived all non-mandatory legal financial obligations. Adam now appeals.

II

Adam contends that the trial court abused its discretion by determining that he was competent to stand trial, asserting that its determination is not supported by the record. We disagree.

A

We review a trial court's competency determination for manifest abuse of discretion. State v. Hanson, 20 Wn. App. 579, 582, 581 P.2d 589 (1978). A court abuses its discretion when its decision adopts a view that no reasonable person would take or that is based on untenable grounds or reasons. State v. Sisouvanh, 175 Wn.2d 607, 623, 290 P.3d 942 (2012).

A trial court is afforded wide discretion in determining a defendant's competency so that it may "consider the evidence that best illuminates whether the defendant has the mental capacity to make the 'sum total of decisions that a defendant may be called upon to make during the course of a trial.'" State v.

Ortiz-Abrego, ___ Wn.2d ___, 389 P.3d 638, 643 (2017) (quoting Godinez v. Moran, 509 U.S. 389, 398, 113 S. Ct. 2680, 125 L. Ed. 2d 321 (1993)).

A defendant is incompetent if he or she "lacks the capacity to understand the nature of the proceedings against him or her or to assist in his or her own defense as a result of mental disease or defect." RCW 10.77.010(15). In determining whether a defendant is competent, a trial court may consider "'the defendant's appearance, demeanor, conduct, personal and family history, past behavior, medical and psychiatric reports and the statements of counsel.'" Ortiz-Abrego, 387 P.3d at 643 (quoting State v. Dodd, 70 Wn.2d 513, 514, 424 P.2d 302 (1967)).

Significantly, a criminal defendant is presumed competent. State v. Coley, 180 Wn. 2d 543, 557, 326 P.3d 702 (2014). The party challenging the defendant's competency must prove incompetency by a preponderance of the evidence. Coley, 180 Wn. 2d at 557.

B

The trial court determined that Adam was competent by relying on the record and proceedings prior to the competency hearing and the evidence presented at the hearing. We review each in turn.

At the first pretrial hearing, Adam sought to proceed pro se based on his belief that his attorney was not properly representing him. Moreover, Adam explained, he felt that his right to a speedy trial was being violated, he wanted to personally interview LaRose, and his attorney had not provided him with an adequate opportunity to view the discovery materials produced by the

- 7 -

prosecutor. In response to Adam's request, the trial judge and Adam engaged in an extended colloquy, during which Adam acknowledged that he was waiving his right to the assistance of an attorney, he understood that the rules of evidence would apply to him, he understood that the State was seeking an exceptional sentence based on an alleged aggravating factor,[4] and that the State had the burden to prove its case against him. The trial court found his waiver of his right to an attorney to be voluntarily and knowingly made and allowed him to proceed pro se.

At a hearing two weeks later, Adam, now pro se, informed the trial court that he had sought to interview LaRose himself and had been prevented from doing so. The trial court explained that another judge had ordered that Adam could not interview the victim himself and that he would have to obtain an investigator to conduct the interview. Also at this hearing, the prosecutor requested to amend the information to add allegations of three aggravating factors. The trial court granted the request and Adam was arraigned on the amended information. The prosecutor also noted that the statutory maximum sentence was 10 years of incarceration and stated that, should Adam wish to reconsider his pro se status, the State would not object. The trial judge then asked Adam if he wished to have a lawyer again represent him. Adam stated that he did. The trial court reappointed his prior attorney.

---

[4] At the time of the colloquy, the State had alleged only the aggravating factor pertaining to sexual motivation.

Four months later, Adam himself filed a request for a competency exam.[5] At a hearing shortly thereafter, his attorney agreed that the examination was warranted. The trial court ordered that Adam be examined. The report of the examining psychologist, Dr. Robert Powers, which was based on his review of Adam's criminal history, medical records, and an 80-minute interview, concluded that Adam was not competent to stand trial. The State did not engage an expert to rebut this evidence.

At the competency hearing, Adam's attorney presented the report and testimony of Dr. Powers. Dr. Powers testified that he had diagnosed Adam as suffering from posttraumatic stress disorder, poly-substance abuse disorder, and unspecified schizophrenia spectrum and other psychotic disorder. From this, Dr. Powers concluded that Adam was not competent to stand trial due to the symptoms of these mental illnesses, which caused Adam to become delusional and unable to stay focused when asked questions about his case. When asked about Adam's mental faculties, Dr. Powers testified that he possessed the "mechanical or the cognitive abilities to know right and wrong, what's legal, what's not. But his delusions kind of overwhelm that."

On cross-examination, Dr. Powers testified that Adam was able to appropriately answer questions when asked about his criminal case but that, soon thereafter, he would devolve into delusions about the case. Dr. Powers also testified that Adam understood that LaRose was the alleged victim, the

---

[5] Prior to the competency hearing, Adam had personally filed numerous motions and affidavits with the trial court, including an affidavit in support of his motion to dismiss his case, an affidavit in support of his request to proceed pro se, and a motion to interview the State's witnesses.

alleged conduct that formed the basis of the criminal charge against him, and that he was being prosecuted for that conduct. Dr. Powers further testified that Adam understood his attorney's role in defending him against the State's prosecution. In response to a question from the prosecutor, Dr. Powers acknowledged that Adam was capable of remembering the events of his case.

> Q: Is it fair to say that Mr. Adam is probably capable, maybe in a – in a somewhat rambling fashion, but capable of saying whether he did something or whether he – whether he remembers whether something happened or not?
> A: Yes.

Adam elected not to testify at the hearing. No other witnesses were called.

The trial court determined that Adam was competent to stand trial. The court concluded, first, that "there's no question that he has a basic understanding of the legal process . . . and the nature of legal proceeding[s]" and, second, that Adam had the capacity to assist his attorney. The court acknowledged that Adam's ability to assist his attorney was "difficult because of the fact that he has a tendency to go off on a tangent of talking about conspiracy theories." The court concluded, however, that Adam could provide at least the constitutional minimum of assistance because "the attorney can get information out of him. It may be more difficult than it would be with a client who didn't have the particular fixation that Mr. Adam has, but the -- it is possible for an attorney to work with him and get the basic information to provide a defense."

C

The trial court's determination was tenable. First, the record supports the finding that Adam had the capacity to understand the legal proceedings against him. The record reflects that Adam understood the stalking charge brought against him, the alleged conduct that led to the charge, the legal rights to which he was entitled during his prosecution, and the various individuals and institutional actors present in the legal proceeding.

Moreover, the record also supports the finding that Adam possessed the capacity to provide his attorney with the basic information necessary to put on a defense. Although Adam may have periodically suffered from certain delusions, the record supports the trial court's finding that he remained capable of providing pertinent information to his attorney when asked, even though it may have required effort by his attorney. Thus, the trial court duly considered Adam's mental faculties and properly determined that he possessed the necessary level of mental functioning to assist his attorney in his defense. Ortiz-Abrego, 387 P.3d at 646 (citing Godinez, 509 U.S. at 404).

Accordingly, we conclude that the record amply supports the trial court's determination that Adam had the necessary understanding of the nature of the legal proceedings against him and that he possessed the capacity to assist his attorney in his defense. There was no error.[6]

---

[6] Adam contends that the trial court erred by disregarding Dr. Powers' conclusion that Adam was incompetent. This is so, he asserts, because Dr. Powers' report was the only competency evaluation in the record and Dr. Powers was the only expert to testify at the competency hearing. We disagree. Our Supreme Court has acknowledged that "[t]he expert's examination and report may be of relatively little importance to the trial court in making its

III

Adam next contends that the trial court erred by instructing the jury that the "prolonged period of time" aggravating factor set forth in RCW 9.94A.535(3)(h)(i) means "more than a few weeks." The State concedes error in this regard and we accept the State's concession. See State v. Brush, 183 Wn.2d 550, 558-59, 353 P.3d 213 (2015).

Adam asserts that he was prejudiced by this error because it cannot be concluded with requisite certainty that the sentencing court would have imposed the same sentence had the challenged aggravator not been found by the jury to have been proved. We disagree.

The jury herein determined that all four aggravating factors submitted to it for consideration were proved. The sentencing court announced that each factor individually warranted the imposition of the sentence imposed.

> The Court finds that the defendant's sexual motivation as evidence[d] by leaving underwear on the victim's car, and repeated calls referencing her body warrant an exceptional sentence above the standard range.
> The Court finds that the presence of the victim's minor daughter for portions of the stalking and the fact that she had to leave her home because the victim feared the Defendant is a substantial and compelling reason to impose an exceptional sentence.
> The Court finds that a standard range sentence would fail to reflect the extensive history of psychological abuse the defendant inflicted on women that he has purely professional or casual contact with. The Defendant has three prior stalking convictions. The Defendant's stalking behavior has persisted despite police intervention and the court[']s intervention.
> The Defendant was in jail for stalking in August 2013 and resumed his stalking behaviors immediately upon his release. His

competency determination in a given case." Sisouvahn, 175 Wn.2d at 622-23. Such argument and testimony is not conclusive on the trial judge.

re-offense immediately after having been released for stalking warrants and [sic] exceptional sentence.

. . . .

Each one of these aggravating circumstances is a substantial and compelling reason, standing alone, that is sufficient justification for the length of the exceptional sentence imposed. In the event that an appellate court affirms at least one of the substantial and compelling reasons, the length of the sentence should remain the same.

It is clear that the sentencing court would have imposed the same sentence if merely one of the aggravating factors had been found by the jury to have been proved. It is equally clear that the sentencing court would impose the same sentence on remand. Thus, Adam is not entitled to appellate relief. State v. Gore, 143 Wn.2d 288, 321, 21 P.3d 262 (2001), rev'd on other grounds, State v. Hughes, 154 Wn.2d 118, 110 P.3d 192 (2005).

IV

Adam also raises several claims in a pro se statement of additional grounds. None are availing.

Adam first claims that he was not competent to stand trial. This claim has been analyzed herein. No further discussion is warranted.

Adam next argues that sufficient evidence does not support his conviction for felony harassment. This is so, he claims, because at the time of the alleged conduct, he had neither a valid driver's license nor a car and was thus unable to visit LaRose's house. To the contrary, sufficient evidence supports Adam's conviction.

Evidence is sufficient to support a conviction if, when viewed in the light most favorable to the State, any rational trier of fact could have found the

essential elements of the charged crime proved beyond a reasonable doubt. State v. Garbaccio, 151 Wn. App. 716, 742, 214 P.3d 168 (2009) (citing State v. Hosier, 157 Wn.2d 1, 8, 133 P.3d 936 (2006)).

At trial, evidence was presented that Adam had, on numerous occasions over a period of several months, made telephone calls to LaRose, left voice mail messages for her, visited her home, placed her in fear for her life, and disregarded her requests that he cease his behavior toward her. RCW 9A.46.110(1), (4). Adam simply desires that we reweigh the evidence. This we will not do. State v. Green, 94 Wn.2d 216, 221, 616 P.2d 628 (1980).

Adam next claims that he was denied his right to a speedy trial. However, he fails to allege the circumstances that gave rise to this alleged deprivation. It is not our role "to search the record to find support for the defendant's claims." State v. Meneses, 149 Wn. App. 707, 716, 205 P.3d 916 (2009), aff'd, 169 Wn.2d 586, 238 P.3d 495 (2010). Thus, the claim fails.

Adam also claims that he was victimized by a conflict of interest. This is so, he argues, because the victim herein had also been his lawyer in a prior criminal matter. To the contrary, a person may not commit a crime upon his former lawyer and then claim that this creates a conflict of interest, immunizing him from prosecution. Adam's claim is frivolous.

Adam's remaining claims are not sufficiently developed for review and fail to adequately inform us of the nature and occurrence of the alleged errors. RAP 10.10(c); State v. Alvarado, 164 Wn.2d 556, 569, 192 P.3d 345 (2008). Accordingly, we do not consider these claims further.

V

Adam requests that no costs be assessed against him on appeal. The State does not contest his claim. Pursuant to <u>State v. Sinclair</u>, 192 Wn. App. 380, 393, 367 P.3d 612, <u>review denied</u>, 185 Wn.2d 1034 (2016), we exercise our discretion and will not impose appellate costs against Adam.

Affirmed.

We concur: